UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FAN ENGINE SECURITIZATION LIMITED; and
JET ENGINE HOLDING S.À R.L.,

                      Plaintiffs,

      v.

DEUTSCHE BANK TRUST COMPANY
AMERICAS, as Trustee, Senior Trustee, Operating
Bank and Security Trustee,

                   Defendant.

Case No. 19-cv-04318-NRB

---

**RESPONSE OF DEUTSCHE BANK TRUST COMPANY AMERICAS,
AS TRUSTEE, SENIOR TRUSTEE, OPERATING BANK AND SECURITY TRUSTEE,
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND LIMITED JOINDER TO INTERVENORS'
MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION**

Defendant Deutsche Bank Trust Company Americas ("DBTCA"), solely in its capacities as Trustee (in such capacity, the "Trustee"), Senior Trustee (in such capacity, the "Senior Trustee"), Operating Bank (in such capacity, the "Operating Bank") and Security Trustee (in such capacity, the "Security Trustee"), submits this (a) response to the Motion for Summary Judgment That No Event of Default Has Occurred under the Terms of the Indenture and Related Operative Documents [Dkt. No. 28] (the "Motion") filed by Plaintiffs Fan Engine Securitization Limited (the "Issuer") and Jet Engine Holding S.À.R.L. (the "Investor," and together with the Issuer, "Plaintiffs") and (b) limited joinder to Intervenors Loomis Sayles Investment Grade Bond Fund, Loomis Sayles Bond Fund, Loomis Sayles Investment Grade Fixed Income Fund and NHIT: Securitized Credit Trust's (collectively, "Controlling Holders") Memorandum of Law in Opposition to the Motion [Dkt. No. 37] (the "Intervenors' Opposition").

In the Motion, Plaintiffs sought an order granting declaratory and related relief that (1) no event of default under the Trust Indenture dated as of October 31, 2013 (the "Indenture") by and among the Issuer, the Trustee, Phoenix American Financial Services, Inc., as administrative agent (the "Administrative Agent"), and BNP Paribas, as initial liquidity facility provider, can occur based upon the allegations that the Administrative Agent miscalculated the principal payments payable to the Series A Noteholders[1] and (2) DBTCA breached the Indenture when it issued the Default Notice at the direction of the Controlling Holders.  [Dkt. No. 28 at 2]. By Order, dated July 11, 2019, the Court found the breach of contract issue with respect to DBTCA raised by Plaintiffs in the Motion to be "clearly outside the scope" of the summary judgment motion authorized by the Court.  [Dkt. No. 36.]  Accordingly, DBTCA does not

---

[1]     Capitalized terms used, but not otherwise defined herein, shall have the meanings set forth in the Indenture.  A copy of the Indenture is attached as Exhibit B to the Declaration of Michael J. Edelman dated July 1, 2019 [Dkt. No. 29] ("Edelman Decl.").

address the breach of contract issue herein and reserves all rights to do so when such issue is properly before the Court.  The only issue before the Court on this Motion, therefore, is the threshold question of whether the alleged miscalculation by the Administrative Agent of principal payments payable under the Indenture can constitute an Event of Default under the terms of the Indenture.

Without taking a position on any other issue raised by the parties on summary judgment, DBTCA hereby joins in the arguments in Section I.C. of Intervenors' Opposition.[2]  In their motion, Plaintiffs assert that there can be no Event of Default, in part, because the Administrative Agent purportedly prepared its calculations as the agent of "Defendant" and the "Noteholder Parties"[3] and such agent "specifically admitted that all payments were properly and timely made and that no Event of Default has occurred."  *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment [Dkt. No. 30] ("Pls.' Mem.") at 13; *see also* Pls.' Mem. at 3, 5.  DBTCA opposes this portion of the Motion because, among other reasons, (1) there is no agency relationship between DBTCA and the Administrative Agent that would preclude the existence of an Event of Default and (2) Plaintiffs may seek to use a ruling by the Court on agency in connection with Plaintiffs' claims that are not the subject of the Motion.

As set forth in Section I.C. of Intervenors' Opposition, the Administrative Agent is not the "agent" of the Trustee for purposes of the calculations that are the subject of the dispute between Plaintiffs and Intervenors.  Instead, under the Indenture, it is the Issuer that causes the Administrative Agent to make its calculations on each Payment Date.  *See* Indenture

---

[2]    DBTCA also joins Intervenors' Rule 56.1 Counterstatement of Facts to the extent relevant to the issues addressed in Section I.C. of Intervenors' Opposition.

[3]    Plaintiffs define the "Noteholder Parties" in their Rule 56.1 statement to include DBTCA, in each of its capacities, and the Controlling Holders.  *See* Plaintiffs' Rule 56.1 Stmt. [Dkt. No. 31] at 5.

§ 3.06(d) ("Issuer shall cause the Administrative Agent … to calculate or determine the following with respect to principal payments due on such Payment Date …: (v) the Scheduled Principal Payment Amount on such Payment Date with respect to each Series of Notes").  The Administrative Agent does not perform any functions under the Administrative Agency Agreement on behalf DBTCA in its capacity as the Trustee.

Here, the Trustee, in its capacities as Trustee and Senior Trustee[4] under the Indenture, issued the Default Notice, dated May 9, 2019 (Edelman Decl. Ex. J at 1), in good faith reliance on the direction of Controlling Holders (Holders of at least a majority of the Outstanding Principal Balance of the Series A Notes).  The terms of the Indenture and related documents make clear that the Trustee was not precluded from doing so by the calculations and statements made by the Administrative Agent.

First, under Section 6.04 of the Indenture, the Trustee is not responsible or liable for the manner or performance of the Administrative Agent's obligations under the Indenture. *See* Indenture § 6.04 ("none of the provisions contained in this Indenture shall in any event require the Trustee to perform, or be responsible or liable for the manner of performance of, any obligation of the Issuer or the Administrative Agent under this Indenture or any of the Related Documents").  Further, the Indenture expressly provides that the Trustee is not liable for the calculations of the Administrative Agent and does not have any obligation to verify or recalculate those calculations:

> The Trustee shall have no duty to monitor the performance of the Issuer, the Servicer, the Administrative Agent or any other party to the Related Documents, nor shall it have any liability in connection with the malfeasance or nonfeasance by such parties.  The Trustee shall have no

---

[4]   Under the Indenture, the "Senior Trustee" means "the Trustee of the Series A Notes (acting at the written direction of the Holders holding a majority of the Outstanding Principal Balance of the Series A Notes)."  *See* Indenture § 1.01.

> obligation, or liability in respect thereto, to verify or recalculate any of the determinations made by the Administrative Agent pursuant to the Related Documents.

Indenture, § 6.04.  Thus, the Trustee's relationship with the Administrative Agent under the Indenture lacks the hallmarks of a principal-agency relationship that would result in the Administrative Agent being able to bind the Trustee.  *See* Intervenors' Opposition at § I.C.

The Administrative Agency Agreement does not provide otherwise.  The Trustee is not a party to the Administrative Agency Agreement.  *See* Edelman Decl. Ex. D at 1.  Rather, the Security Trustee is a party to the Administrative Agency Agreement.  *Id*.[5]  The Security Trustee is not a party to the Indenture (*see generally* Indenture), and the Security Trustee did not issue the Default Notice (Edelman Decl. Ex. J at 1).  Simply put, the Administrative Agent is not an agent of the Trustee under the Administrative Agency Agreement and does not have the authority to bind the Trustee, including with respect to the Administrative Agent's calculations and whether an Event of Default has occurred under the Indenture.  *See* Intervenors' Opposition at § I.C.

---

[5]     Although the Security Trustee confirmed the appointment of "Phoenix as Administrative Agent as the provider of bank account management, calculation and other services" in Section 2.01(b) of the Administrative Agency Agreement, the parties to the Administrative Agency Agreement expressly agreed that the Security Trustee shall not have any liability for the acts of the Administrative Agent.  *See* Administrative Agency Agreement § 10.10 ("It is expressly agreed and understood that the Security Trustee shall not have any liability in respect of the appointment, performance or nonperformance of the Administrative Agent, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under such parties.").

New York, New York
July 25, 2019

Respectfully submitted,

SEWARD & KISSEL LLP

By:    s/ Mark D. Kotwick
        Mark D. Kotwick
        Thomas Ross Hooper

One Battery Park Plaza
New York, New York 10004
Tel:    (212) 574-1200
Fax:   (212) 480-8421
kotwick@sewkis.com

*Attorneys for Deutsche Bank Trust Company*
    *Americas, as Trustee, Senior Trustee,*
    *Operating Bank and Security Trustee*

SK 00211 3381 8343554